## PRINCE GEORGE'S COUNTY, MARYLAND v. COMMONWEALTH LAND TITLE INSURANCE COMPANY

[No. 338, September Term, 1980.]

*Decided December 12, 1980.*

The cause was argued before THOMPSON, LOWE and WEANT, JJ.

*Michael P. DeGeorge, Associate County Attorney for Prince George's County,* with whom were *Robert B. Ostrom, County Attorney for Prince George's County,* and *Michael O.*

*Connaughton, Deputy County Attorney for Prince George's County,* on the brief, for appellant.

*Carlton M. Green* for appellee.

WEANT, J., delivered the opinion of the Court.

Before setting out the facts that spawned the instant appeal, we think it better to set out the questions that we have been asked to resolve. Stated simply, they are:

> 1. Did a lien [in favor of the appellant Prince George's County, Maryland (P.G. County)] attach to the real property of Claude J. Hill prior to his conveyance to the insureds of the appellee [Commonwealth Land Title Insurance Company (Commonwealth)]?
>
> 2. Did the *nunc pro tunc* Order affect the property previously conveyed by Claude J. Hill?

For the reasons stated herein, our response to the above-stated queries must be in the negative.

— the facts —

On 7 April 1978, Prince George's County filed a Declaration in the Circuit Court for Prince George's County alleging that Claude J. Hill was indebted to it in the amount of Eighteen Thousand, One Hundred Fifty-eight Dollars and Twelve Cents ($18,158.12). On this same date Prince George's County also filed a Motion for Summary Judgment.

Aside from a Motion Raising Preliminary Objection, which was denied, no pleadings were filed by Mr. Hill. As a result, on 16 August 1978, the court ordered that summary judgment be entered in favor of the appellant. The corresponding docket entries of that date state in pertinent part: "Judgment entered in favor of the Plaintiff Prince George's County, Maryland against the Defendant Claude J. Hill and is subject to ex parte proof." Neither the order granting the motion for summary judgment, nor the docket

entries pertaining to such, specify the amount that Mr. Hill owed Prince George's County.

On the very next day Mr. Hill filed responsive pleadings, and on the day thereafter he filed a Petition to Set Aside Summary Judgment Entered by Default. This matter came before the court on 14 September 1978, at which time the court, in an oral opinion, resolved it in the following manner:

> The Court, therefore, I believe, can satisfy both the plaintiff and the defendant in this case by not vacating the judgment, but by merely opening up the judgment, and therefore, the judgment will be opened up, and the matter will be set for trial.
>
> That means the judgment still remains so that the defendant will be prohibited from disposing of his property without some escrow arrangements being made in the interim, and he can also have his day in Court.

Ignoring the latter portion of the trial court's opinion, Claude Hill, on 8 October 1978, conveyed certain real property situated in Prince George's County to persons whose title is insured by Commonwealth.

The event which directly precipitated the instant appeal occurred when the court, having considered the ex parte proof presented in conjunction with the previously granted motion for summary judgment,

> ORDERED that judgment *nunc pro tunc* to August 16, 1978, be granted herein against defendant, Claude J. Hill, in the amount of Eighteen Thousand One Hundred Fifty-eight and 12/100 Dollars ($18,158.12), and ... further
>
> ORDERED that this Order shall not be considered to in any way vacate, reverse or supercede [*sic*] the Order of the Court entered on August 16, 1978. [1]

---

1. (Footnote added). This order, dated 27 December 1978, was filed 2 January 1979.

Obviously worried about the effect that the above-recited order might have on it, Commonwealth, on 29 October 1979, filed a Motion to Intervene and for Declaratory Judgment, wherein it sought among other things to have the court declare that "no lien attached in favor of Prince George's County on the aforesaid real property of Claude J. Hill prior to its transfer to [its insureds]." When ruling on this declaratory judgment motion, the court, on 6 February 1980, held as follows:

> Based on my review of these records, the transcript and so forth, I declare, and so find, that there was no valid judgment by Prince George's County against this individual, Hill, and at the time of the disbursement, and so forth, the intervenor should not have been put on notice that such a judgment existed, that no valid, full and final judgment was entered against Mr. Hill until January of 1979.

In essence, the court's holding of February 6 rendered nugatory previous court orders which manifestly held otherwise. Not surprisingly, Prince George's County has appealed the court's February 6 ruling.

— the issues —

Maryland Rule 620, entitled "Lien of Judgment," states at section a:

> A judgment shall constitute a lien *to the amount* and *from the date* thereof upon all real estate of the judgment debtor lying in the county wherein the judgment was entered, and upon all leasehold interest and terms for years of the judgment debtor in land, except leases from year to year and leases for terms of not more than five years and not renewable. [Emphasis added].

We read this provision, particularly the italicized portions thereof, to mean that there is no lien until an amount has been specified. *See Liquor Dealers Credit Control, Inc. v.*

*Comptroller,* 241 Md. 656, 217 A.2d 571 (1966), wherein the Court of Appeals stated at page 661, 217 A.2d at 574:

> Since a lien predicated upon the rendition or entry of a judgment did not exist at common law, a judgment is not, in and of itself, a lien on either real or personal property. The right a judgment creditor has to a lien is therefore wholly statutory. *Caltrider v. Caples,* 160 Md. 392, 394, 153 Atl. 445 (1931).

Therefore, no lien attached to Claude Hill's Prince George's County property until 2 January 1980, the date the court's order specifying the amount owed by Mr. Hill to Prince George's County was filed.

As to the court's comment in its oral opinion of September 14 that opening the judgment of 16 August 1979 rather than vacating such resulted in Mr. Hill's property remaining encumbered,[2] it did not have the intended effect, since no lien had attached originally. Had an amount been specified in the August 16 order, we would be constrained to hold otherwise. *E.g., Adams v. James L. Leeds Co.,* 189 Pa. 544, 547, 42 A. 195, 196 (1899), wherein the Supreme Court of Pennsylvania stated:

> The opening of a judgment *which is a lien on real estate* does not destroy or impair the lien, nor does it necessarily affect the lien of a levy made upon personalty under an execution issued on the judgment. The liens in either case may and should be continued pending the determination of the issues relating to the validity of the judgment, and to the nature and amount of the indebtedness represented by it. [Emphasis added].

The failure to designate the amount of indebtedness in the instant case is fatal also to the argument that "[a]ny uncertainty as to the amount of the judgment entered on August 16, 1978 is cured by making reference to the

---

2. For a discussion of the distinction between opening and vacating a judgment, see 46 Am. Jur. 2d *Judgments* §§ 680, 787 (1969).

pleading, exhibits, and affidavits on file in the case." As support for this contention, P.G. County states: "In the majority of jurisdictions which have addressed this question, it has been held that the amount of recovery, if not specified in the Court's order, may be supplied from the record as a whole, including the pleadings and other instruments filed in the case. [46 Am. Jur. 2d *Judgments* § 76 (1969)]." While we have no dispute with the general proposition that resort to other portions of the record may be had where there is uncertainty or ambiguity as to the amount of a judgment, *e.g., State v. Haney,* 277 S.W.2d 632, 635-36 (Mo. 1955) and cases cited therein, we do not find such to be an appropriate measure in the instant case, where no uncertainty or ambiguity can be said to exist. Here the omission of the judgment's amount was purposeful, as evidenced by the notation in the docket that the judgment was subject to ex parte proof. We can only assume that the introduction of the ex parte proof was intended to go to the issue of the indebtedness amount, since as soon as such proof was presented to the court, it ordered that "judgment *nunc pro tunc* to August 16, 1978, be granted herein against defendant, Claude J. Hill, in the amount of Eighteen Thousand One Hundred Fifty-eight and 12/100 Dollars ($18,158.12) . . .."

The fact that the court's order of January 2 spoke of a "judgment *nunc pro tunc* to August 16, 1978," leads us to a discussion of Prince George's County's second contention, *i.e.,* that "[t]he judgment *nunc pro tunc* entered on January 2, 1979 relates back to August 16, 1978 and has priority over the interest obtained in appellee's insureds."

Black's Law Dictionary (5th ed. 1979) at page 964 defines the term *"nunc pro tunc "* as follows:

> Lat. Now for then. In re Peter's Estate, 175 Okl. 90, 51 P.2d 272, 274. A phrase applied to acts allowed to be done after the time they should be done, with a retroactive effect, *i.e.,* with the same effect as if regularly done. Nunc pro tunc entry is an entry made now of something actually previously done to have effect of former date; office being not

to supply omitted action, but to supply omission in record of action really had but omitted through inadvertence or mistake. Seabolt v. State, Okl. Cr., 357 P.2d 1014.

Nunc pro tunc merely describes inherent power of court to make its records speak the truth, *i.e.,* to record that which is actually but is not recorded. Simmons v. Atlantic Post Line R. Co., D.C.S.C., 235 F.Supp. 325, 330. Nunc pro tunc signifies now for then, or, in other words, a thing is done now, which shall have the same legal force and effect as if done at time when ought to have been done. State v. Hatley, 72 N.M. 377, 384 P.2d 252, 254.

The key phrase in the above-recited definition is "office being not to supply omitted action, but to supply omission in record of action really had but omitted through inadvertence or mistake."

Our research has revealed that a number of our sister jurisdictions have ruled that the purpose of a *nunc pro tunc* entry is to correct a clerical error or omission as opposed to a judicial error or omission. In *Bostwick v. Van Vleck,* 106 Wis. 387, 390, 82 N.W. 302, 303 (1900), the Wisconsin Supreme Court set out "[t]he test to be applied in determining whether an error in a judgment is of a judicial character, or a mere clerical mistake which may be corrected in the court where it was made at anytime, saving intervening rights of third parties and with due regard to equitable considerations," as being

whether the error relates to something that the trial court erroneously omitted to pass upon or considered and passed upon erroneously, or a mere omission to preserve of record, correctly in all respects, the actual decision of the court, which in itself was free from error. If the difficulty is found to be of the latter character, it may be remedied as a mere clerical mistake, which will not have the effect to change the judgment pronounced in the slightest degree, but merely to correct the record evidence of such judgment.

*See generally* 46 Am.Jur. 2d *Judgments* §§ 196-203 (1969). We are in agreement with the approach outlined above. *See also Maryland, Delaware & Virginia R. Co. v. Johnson,* 129 Md. 412, 416-17, 99 A. 600, 601-02 (1916); *Sapero & Sapero v. Bel Air Plumbing & Heating Contractors, Inc.,* 41 Md. App. 251, 259, 396 A.2d 317, 322 (1979). Therefore, in the light of our previous discussion as to why a judgment amount was not specified on 16 August 1979, it becomes obvious that the use of a *nunc pro tunc* entry was inappropriate in the case *sub judice.*

Accordingly, the judgment of the trial court shall be affirmed.

*Judgment affirmed.*
*Costs to be paid by the appellant.*