988 A.2d 1

**Charles M. CAVE**

v.

**Calvin ELLIOTT, Jr.**

**No. 56 Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Jan. 27, 2010.

68

Elissa D. Levan (Cynthia G. Peltzman, Douglas F. Gansler, Atty. Gen. on the brief), for appellant.

Patrick J. McAndrew (Murray A. Zitver, McAndrew, Zitver & McGrath, PA on the brief), Greenbelt, for appellee.

Panel: SALMON, WOODWARD and WILLIAM W. WENNER, (Retired, Specially Assigned), JJ.

WOODWARD, J.

This appeal arises from the termination of appellee, Calvin Elliott, Jr., from his position as a Deputy Sheriff with the Howard County Sheriff's Office ("Sheriff's Office") on October 28, 2005. On December 14, 2005, Elliott filed a complaint for a show cause order in the Circuit Court for Howard County pursuant to the Law Enforcement Officers' Bill of Rights ("LEOBR"), Maryland Code (2003), § 3–105 of the Public Safety Article. ("P.S."). Elliott requested that the court issue an order requiring the Sheriff's Office and appellant, Howard County Sheriff Charles M. Cave, to show cause, if any, why the rights provided by the LEOBR should not be afforded to Elliott.

As of January 25, 2006, all of the judges of the Circuit Court for Howard County recused themselves from the case. The case was then transferred to the Circuit Court for Carroll County. Following a show cause hearing held on August 25, 2006, the Circuit Court for Carroll County, in a memorandum opinion, found that Elliott was improperly denied his right under the LEOBR to a hearing before a hearing board prior to his termination. By separate order, the court ordered Elliott's reinstatement to his former position as a Deputy Sheriff with the Sheriff's Office, "including the payment of all back pay and benefits."

On appeal, Cave presents one question for our review, which we have rephrased:

Did the trial court err in awarding Elliott back pay and benefits when it determined that Elliott had been denied his right under the LEOBR to a hearing before a hearing board prior to the termination of his employment? [1]

For the following reasons, we shall affirm the judgment of the circuit court.

### FACTS & PROCEEDINGS

Elliott was employed as a Deputy Sheriff with the Sheriff's Office on a continuous basis from September 24, 2001, through October 28, 2005. During that time, Elliott was assigned to the Transport Court Security Unit. On October 28, 2005, Elliott received a memorandum from Major R. Scott Mergenthaler, Chief Deputy of the Sheriff's Office, advising Elliott that his employment was terminated, effective immediately. The memorandum stated that, in lieu of notice of his termination, Elliott would be compensated two weeks' pay.

---

1. Cave does not challenge the trial court's ruling that Elliott was entitled under the LEOBR to a hearing before a hearing board prior to his termination. Nor does Cave contest the court's order reinstating Elliott to his former position as a Deputy Sheriff. Cave concedes that the reinstatement issue is moot, because newly elected Sheriff James Fitzgerald subsequently rehired Elliott as a Deputy Sheriff. At all times relevant to this appeal, Cave was the Sheriff of Howard County.

On December 14, 2005, Elliott filed a Complaint For Show Cause Order Pursuant to the Law Enforcement Officers' Bill of Rights in the Circuit Court for Howard County. Pursuant to P.S. § 3–105, Elliott requested that the court issue an order "directing [Cave and the Sheriff's Office] to Show Cause why [Elliott] should not be afforded the rights guaranteed by the [LEOBR], and consistent with principles of due process under the Constitution of the United States and the State of Maryland." In addition, Elliott requested that the court issue an order directing Cave and the Sheriff's Office to restore Elliott to his former position as a Deputy Sheriff, "including the payment of all back pay and benefits."[2]

On December 30, 2005, the Circuit Court for Howard County entered a show cause order, pursuant to P.S. § 3–105, directing Cave and the Sheriff's Office to "show cause, if any, on or before the 29th day of January, 2006, why the rights provided by the [LEOBR] should not be afforded [Elliott]." The court further ordered that the show cause order stand for a hearing on February 9, 2006.

On January 30, 2006, Cave filed a Response to Order to Show Cause, requesting that the court dismiss the show cause order or, alternatively, find no violation of the LEOBR. In his response, Cave asserted, *inter alia*, that Elliott was not entitled to the due process protections of the LEOBR, because Elliott's termination was due to poor performance, and the LEOBR accorded procedural protections only to law enforcement officers "who are being investigated or interrogated for the purpose of imposing disciplinary action." Cave, however, did not respond to Elliott's request for reinstatement with payment of back pay and benefits.

Thereafter, all of the judges of the Circuit Court for Howard County recused themselves from the case, and on Febru-

---

**2.** Elliott also requested that he be granted further relief, "including the costs of these proceedings and reasonable attorneys' fees." No action was taken by the circuit court on this request at the conclusion of the case.

ary 13, 2006, the parties consented to a transfer of the case to the Circuit Court for Carroll County.

Following the transfer, on August 25, 2006, the Circuit Court for Carroll County held a hearing pursuant to the show cause order. In a written memorandum opinion dated December 12, 2006, the court concluded that the actions of Cave and the Sheriff's Office "were sufficient to constitute an investigation as contemplated by the terms of the LEOBR and the appellate decisions interpreting the same, and [Elliott's] dismissal was punitive in nature." Accordingly, the court found that Elliott was denied the right to a hearing under the LEOBR prior to his termination. In an order dated December 12, 2006, and entered December 13, 2006, the court ordered Elliott's reinstatement to his former position as a Deputy Sheriff, "including the payment of all back pay and benefits."

On December 22, 2006, Cave filed a Motion for Reconsideration, asking the court to "reconsider its order insofar as it provide[d] for reinstatement and the payment of back pay and benefits." Cave argued that reinstatement was not a right guaranteed by the LEOBR and that, regarding back pay and benefits, the parties were entitled to litigate the amount to be awarded and Elliott had a duty to mitigate his damages. Therefore, Cave asserted that, "[a]t the very least, [he] is entitled to discovery of the efforts [Elliott] made to mitigate damages, the amount of time he actually worked, his efforts to find other employment, whether he earned unemployment insurance, and other issues related to benefits he claimed were lost as a result of the termination of his employment."

According to Cave, his Motion for Reconsideration was hand-delivered to the Circuit Court for Carroll County. As the motion appears in the record, it was time and date stamped, "RCVD 06 DEC22'06 13:08," indicating its receipt by that court on December 22, 2006. The caption of the motion, however, read, "In The Circuit Court For *Howard County*," and the case number appearing on the motion was the case number assigned by the Circuit Court for Howard

County prior to the transfer of the case to the Circuit Court for Carroll County. (Emphasis added). The motion contained the correct names of the parties. Instead of docketing Cave's Motion for Reconsideration, the civil clerk of the Circuit Court for Carroll County returned the miscaptioned motion to Cave's counsel, striking out the time and date stamp on the motion and attaching a memorandum that stated that the motion was filed in the Circuit Court for Carroll County in error.

On January 4, 2007, Cave filed a Motion to Accept Filing of Motion for Reconsideration in the Circuit Court for Carroll County, requesting the court to accept for filing a motion for reconsideration identical to the motion Cave filed on December 22, 2006, but with a corrected caption. As the basis for his request, Cave stated that "the motion was timely filed, albeit with an erroneous caption."

On January 18, 2007, Elliott filed an Opposition to Motion to Accept Filing of Motion for Reconsideration. In his opposition, Elliott argued that Cave's motion, "whether intended as a [Maryland Rule] 2–534 or [Rule] 2–535 motion[,] is time barred and cannot now be accepted for filing by the Clerk."

By order dated January 19, 2007, the circuit court granted Cave's Motion to Accept Filing of Motion for Reconsideration and ordered that Cave's corrected motion for reconsideration, "which was originally filed on December 22, 2006, is accepted for filing, nunc pro tunc." Thereafter, on February 7, 2007, Elliott filed an opposition to Cave's Motion for Reconsideration. On February 15, 2007, the court entered an order denying Cave's Motion For Reconsideration.

Cave noted this appeal, which was filed in the Circuit Court for Carroll County on March 15, 2007.

## *MOTION TO DISMISS*

### I.

### Jurisdiction

Preliminarily, Elliott moves to dismiss this appeal pursuant to Maryland Rule 8–602(a)(3), because Cave did not file his

notice of appeal within 30 days after entry of the judgment or order from which the appeal is taken. Elliott argues that as of January 12, 2007, which was 30 days after the entry of the order granting Elliott the relief requested, no Motion to Alter or Amend a Judgment (Rule 2–534), no Motion for Revisory Power (Rule 2–535), and no notice of appeal had been filed. According to Elliott, the only notice pending at that time was Cave's Motion to Accept Filing of Motion for Reconsideration, which was not ruled upon by the trial court until January 19, 2007. Elliott contends that the trial court did not have any authority under the Maryland Rules to enter the January 19, 2007 *nunc pro tunc* order and "thus all orders that flowed from it are nullities." Elliott concludes that the trial court

> lost jurisdiction respecting revisory power (other than for fraud, mistake or irregularity—not at issue in the case at bar) forever when thirty days expired (on or about January 12, 2007) with no motion for revisory power, other post-trial proceeding, or notice of appeal having been filed. The Notice of Appeal filed on March 15, 2007, was approximately sixty (60) days too late.

Cave responds that the circuit court has the inherent authority "to order an act to be done *nunc pro tunc* as a means to amend the record to correct clerical errors to reflect that a thing is done, though not recorded." Cave asserts that the trial judge acted within his discretion to order the filing of the motion for reconsideration *nunc pro tunc*, because the motion was timely filed in the proper court, but "counsel's clerical error in including the wrong case caption resulted in the docket entries being incomplete." Therefore, according to Cave, the trial court's order caused the docket entries to properly reflect that his motion for reconsideration was filed on December 22, 2006, which was within the ten day period required for a motion to alter or amend under Rule 2–534. Accordingly, Cave concludes that his notice of appeal, filed within 30 days after the denial of the motion for reconsideration, was timely.

## A.

■ Before addressing the authority of the circuit court to enter the January 19, 2007 *nunc pro tunc* order, we must determine whether Cave properly filed his Motion for Reconsideration on December 22, 2006, in the Circuit Court for Carroll County and, if so, whether the court clerk had the authority to refuse to accept the motion for filing because the caption had the incorrect name of the court and docket number.

In *Cherry v. Seymour Brothers,* 306 Md. 84, 507 A.2d 613 (1986), the Court of Appeals stated:

"[A] paper is said to be 'filed' when it is delivered to the proper officer and received by him to be kept on file. In modern usage, the 'filing' of a paper consists in placing it in the custody of the proper official who makes the proper indorsement thereon."

*Id.* at 92, 507 A.2d 613 (alteration in original) (quoting *Levy v. Glens Falls Indem. Co.,* 210 Md. 265, 273, 123 A.2d 348 (1956)). In *Bond v. Slavin,* 157 Md.App. 340, 351, 851 A.2d 598 (2004), this Court observed that the "date that a pleading or paper is 'filed' is the date that the clerk receives it. . . . A pleading or paper is filed by *actual delivery* to the clerk. . . ." (Citation and internal quotations omitted) (alterations and emphasis in original).

Rule 1–301(a), entitled "Form of court papers," requires that "[e]very pleading and paper filed shall contain a caption setting forth (1) the parties or, where appropriate, the matter, (2) the name of the court, (3) the assigned docket reference, and (4) a brief descriptive title of the pleading or paper which indicates its nature." Rule 1–301, however, does not speak to the situation where a pleading or paper complies with the aforementioned requirements of form, but contains an error in the name of the court or the docket number. In *Cherry,* the Court of Appeals acknowledged that in its prior articulation of what constitutes a "filing," there is absent "any requirement that the paper be properly captioned or an original document." 306 Md. at 92, 507 A.2d 613.

Applying the above principles to the facts of the case *sub judice,* we conclude that Cave properly filed his Motion for Reconsideration on December 22, 2006, in the Circuit Court for Carroll County. It is undisputed that the motion was hand-delivered to a clerk of the Circuit Court for Carroll County on December 22, 2006. The clerk was the proper officer to receive the motion, and the Circuit Court for Carroll County was the correct tribunal in which the instant case was being litigated. The motion correctly listed the names the parties. The clerk then stamped the motion "RCVD 06 DEC 22'06 13:08." The fact that the caption of the motion incorrectly stated the name of the court and the docket number does not alter the effectiveness of its filing.

With Cave's Motion for Reconsideration having been properly filed, did the court clerk have the authority to refuse to accept the motion for filing because of the erroneous caption? We hold that the court clerk did not have the authority to reject Cave's Motion for Reconsideration. We explain.

Rule 1–323, entitled "Proof of service," provides:

The clerk shall not accept for filing any pleading or other paper requiring service, other than an original pleading, unless it is accompanied by an admission or waiver of service or a signed certificate showing the date and manner of making service. A certificate of service is prima facie proof of service.

In *Director of Finance v. Harris,* 90 Md.App. 506, 602 A.2d 191 (1992), this Court held:

The only authority that a clerk has to refuse to accept and file a paper presented for filing is that contained in Md. Rule 1–323. As we noted, that Rule directs the clerk not to accept a paper requiring service "unless it is accompanied by . . . a signed certificate showing the date and manner of making service."

*Id.* at 511, 602 A.2d 191 (alteration in original). Similarly, in the commentary on Rule 1–323, Paul Niemeyer and Linda Schuett write: "Under most circumstances, however, regardless of how defective or deficient the pleading or paper is, the

clerk may not reject it . . ., but rather should leave it to the court and the parties to determine the sanction for the defect or deficiency." Paul Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 48–49 (3d ed.2003).

In the instant case, the Motion for Reconsideration presented to the circuit court clerk on December 22, 2006, contained a "signed certificate showing the date and manner of making service." Md. Rule 1–323. Accordingly, notwithstanding the errors in the name of the court and docket number in the caption, the clerk did not have the authority to refuse to accept the motion for filing and thus erred by returning the motion to Cave's counsel with the date stamp stricken.

### B.

Trial courts are vested with the common law authority to correct certain errors *nunc pro tunc.* *Sapero & Sapero v. Bel Air Plumbing & Heating Contractors*, 41 Md.App. 251, 259, 396 A.2d 317 (1979). We have previously examined the definition of the phrase *nunc pro tunc:*

Lat. Now for then. A phrase applied to acts allowed to be done after the time they should be done, with a retroactive effect, i.e., with the same effect as if regularly done. **Nunc pro tunc entry is an entry made now of something actually previously done to have effect of former date; office being not to supply omitted action, but to supply omission in record of action really had but omitted through inadvertence or mistake.**

Nunc pro tunc merely describes inherent power of court to make its records speak the truth, *i.e.,* to record that which is actually but is not recorded. Nunc pro tunc signifies now for then, or, in other words, a thing is done now, which shall have the same legal force and effect as if done at time when ought to have been done.

*Short v. Short*, 136 Md.App. 570, 578–79, 766 A.2d 651 (2001) (citations omitted) (emphasis added).

The court's *nunc pro tunc* power is "essential to [its] efficient existence" but its use is restricted only "[t]o make the

Record speak the truth and conform to the facts." *Sapero & Sapero,* 41 Md.App. at 259, 396 A.2d 317 (internal quotations omitted). The court

> is authorized to make only such corrections as will make the record conform to the actual facts occurring in the progress of the cause, or in other words, make the Record speak the truth. · It cannot so change the Record as to make it inconsistent with the facts, or make it state what is not true.

*Id.* (internal quotations omitted).

As early as 1869, the Court of Appeals explained:

> If satisfied either from his [(the judge's)] own knowledge of what had actually occurred in the progress of the cause—or from evidence adduced—that the docket entries as made by the clerk were erroneous and incomplete, it was within his power and his plain duty to have them corrected, so that a full, true and perfect transcript of the whole proceedings as they actually occurred in the progress of the cause might be sent up in obedience to the writ.

*Greff v. Fickey,* 30 Md. 75, 77 (1869).

█ The purpose of a *nunc pro tunc* order is also " 'to correct a clerical error or omission as opposed to a judicial error or omission.' " *In re Timothy C.,* 376 Md. 414, 430 n. 10, 829 A.2d 1024 (2003) (quoting *Prince George's County v. Commonwealth Land Title,* 47 Md.App. 380, 386, 423 A.2d 270 (1980)). We have adopted the following approach to determine "whether an error in a judgment is of a judicial character, or a mere clerical mistake which may be corrected in the court where it was made at any time, saving intervening rights of third parties and with due regard to equitable considerations[:]"

> [The test is] whether the error relates to something that the trial court erroneously omitted to pass upon or considered and passed upon erroneously, or a mere omission to preserve of record, correctly in all respects, the actual decision of the court, which in itself was free from error. If the difficulty is found to be of the latter character, it may be remedied as a mere clerical mistake, which will not have the

effect to change the judgment pronounced in the slightest degree, but merely to correct the record evidence of such judgment.

*In re Timothy C.*, 376 Md. at 430–31 n. 10, 829 A.2d 1024 (internal quotations omitted).

We have held, as previously stated, that the court clerk erred by refusing to accept for filing Cave's Motion for Reconsideration. The correction of such clerical error *nunc pro tunc* to reflect the actual fact that Cave's Motion For Reconsideration was filed on December 22, 2006, does not have the effect of changing the judgment or supplying omitted action. *See Short*, 136 Md.App. at 579, 766 A.2d 651. Rather, ordering the date of the motion effective retroactively makes the record speak the truth and conform to the facts, namely, recording what was actually done then but not recorded through such inadvertence or mistake. *See id.* at 578–79, 766 A.2d 651. Therefore, we conclude that the court's January 19, 2007 order accepting Cave's Motion For Reconsideration for filing as of December 22, 2006, was an appropriate order *nunc pro tunc*.

## C.

Nevertheless, Elliott argues that the circuit court did not have the authority to enter the *nunc pro tunc* order on January 19, 2007, because it was entered more than 30 days from the entry or the order granting Elliott full relief on December 13, 2006. Elliott states:

[Cave] was aware, within the thirty date [sic] time frame from final judgment . . ., that the Circuit Court for Carroll County had not accepted for filing nor docketed his Motion For Reconsideration. [Cave] at that time could have timely filed a Rule 2–535 request for revisory power, a Rule 8–202 Notice of Appeal, or both, but he chose to do neither and let the thirty days lapse.

Therefore, according to Elliott, the court's *nunc pro tunc* order and "all orders that flowed from it are nullities." We disagree and explain.

On January 4, 2007, Cave filed a Motion to Accept Filing of Motion for Reconsideration in the Circuit Court for Carroll County, requesting that the court accept a motion for reconsideration identical to the motion Cave filed on December 22, 2006, but with a corrected caption. As the basis for his request, Cave stated that "the motion was timely filed, albeit with an erroneous caption." Cave's Motion to Accept Filing of Motion for Reconsideration was filed after 10 days but within 30 days of the court's final judgment entered on December 13, 2006. Such motion, in our view, was a Rule 2–535 motion, because it called upon the court to exercise its post-judgment revisory power. *Cf. Sieck v. Sieck,* 66 Md.App. 37, 44–45, 502 A.2d 528 (1986) (stating that "a motion to revise the judgment, however labeled, filed within ten days after the entry of judgment will be treated as a Rule 2–534 motion").

We conclude that the court's revisory power under Rule 2–535(a) [3] necessarily entails the authority to *nunc pro tunc* the entry of a post-judgment motion, properly filed but mistakenly rejected by the clerk's office, to reflect the day of its actual filing, here December 22, 2006. The court's *nunc pro tunc* order gave Cave's Motion For Reconsideration *"the same legal force and effect as if done at the time it ought to have been done." See 91st Street Joint Venture v. Goldstein,* 114 Md. App. 561, 582, 691 A.2d 272 (1997) (emphasis added). Consequently, following the entry *nunc pro tunc* order, the record reflected Cave's filing of the Motion For Reconsideration on December 22, 2006, which was within ten days after the entry of the court's final judgment on December 13, 2006. Having been filed within that ten day period, Cave's Motion for Reconsideration is treated as a Rule 2–534 motion, thereby

---

**3.** Maryland Rule 2–535(a) provides:

On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534. A motion filed after the announcement or signing by the trial court of a judgment or the return of a verdict but before entry of the judgment on the docket shall be treated as filed on the same day as, but after, the entry on the docket.

"stay[ing] the time for appeal under [Rule 8–202(c)] and prevent[ing] the noting of an appeal until the motion is resolved." *Sieck,* 66 Md.App. at 41, 44–45, 502 A.2d 528. Accordingly, the circuit court's entry of judgment on December 13, 2006, lost its finality for purposes of appeal, and Cave timely noted this appeal on March 15, 2007, which was within 30 days of the court's disposition of his Motion For Reconsideration on February 15, 2007. *See id.*

## II.

### Preservation

Elliott also argues, as a basis for his motion to dismiss, that, pursuant to Maryland Rule 8–131(a), Cave waived his right to appeal the circuit court's decision to award back pay and benefits. Specifically, Elliott asserts that Cave failed to contest Elliott's entitlement to back pay and benefits in his Response to Order for Show Cause or at the August 25, 2006 show cause hearing, and that Cave first challenged the court's authority to grant back pay and benefits in his post-trial Motion for Reconsideration. Elliott concludes that the circuit court "had no opportunity to consider the issue [of back pay and benefits] at trial and [Elliott] had no chance to prepare to argue the issue."

Cave concedes that the issue of back pay and benefits was never addressed by the parties or by the trial court during the show cause hearing. Cave asserts, however, that, because the issue was part of Cave's Motion for Reconsideration and that motion was denied by the trial court, "the matter was before the trial court and was thus preserved for appellate review." Cave is wrong.

In his complaint, Elliott expressly requested relief in the form of "payment of all back pay and benefits." Cave did not raise the issue of the court's authority to award back pay and benefits before the circuit court in his Response to Order to Show Cause or at the hearing held pursuant to the show cause order. Cave first contested the court's authority to award back pay and benefits in his post-trial Motion for Reconsidera-

tion. We encountered a similar factual setting and nonpreservation argument in *Steinhoff v. Sommerfelt,* 144 Md.App. 463, 798 A.2d 1195 (2002).

In *Steinhoff,* the parties engaged in extensive litigation of the appellee's request for alimony, monetary award, and attorney's fees and costs. 144 Md.App. at 469, 798 A.2d 1195. At no time during the trial did the appellant raise the issue of the appropriateness of a Qualified Domestic Relations Order ("QDRO") as a mechanism for payment of a monetary award. *Id.* at 483, 798 A.2d 1195. The trial court issued an Opinion and Order that granted the appellee, among other things, a monetary award of $191,403, with no mention of a QDRO. *Id.* at 470, 798 A.2d 1195. The appellant then moved to alter or amend the judgment to permit payment of the monetary award by way of a QDRO, which was denied by the trial court. *Id.* at 469, 483, 798 A.2d 1195.

Writing for this Court, Judge Charles Moylan, Jr. determined that, because the subject of QDRO was never raised at the trial, "[t]here is before us, therefore, nothing preserved for appellate review." *Id.* at 483, 798 A.2d 1195. The fact that the issue was raised in the appellant's motion to alter or amend did not change the result. *Id.* at 483–84, 798 A.2d 1195. Judge Moylan observed that, if the appeal was from the order granting the monetary award, as opposed to the denial of the motion to alter or amend,[4] "we will not allow the appellant's reference to raising the issue in a post-trial motion to serve as a smokescreen obscuring the earlier and fatal nonpreservation." *Id.* at 484, 798 A.2d 1195.

---

**4.** Judge Moylan observed:

There are significant differences between the two arguable appeals. They are diametrically different in terms of the preservation of the contention. They are also vastly different in terms of the respective standards of appellate review. Involved are two absolutely distinct procedural phenomena that do not casually coalesce into a single warm and fuzzy contention. The appellant may not exploit an appeal from a post-trial procedure as a device to outflank the non-preservation bar to an appeal from a trial procedure. One may not preserve an issue nunc pro tunc.

*Steinhoff v. Sommerfelt,* 144 Md.App. 463, 483, 798 A.2d 1195 (2002).

In the case *sub judice,* Cave declared in his brief that this appeal "challenges only the order to award [ ] Elliott back pay and benefits." Consequently, because Cave did not raise the issue of the authority of the circuit court to award back pay and benefits at the trial that resulted in such award, the issue has not been preserved for appellate review, notwithstanding Cave's subsequent raising of the issue in his Motion for Reconsideration. *See Law Offices of Taiwo Agbaje, P.C. v. JLH Props., II, LLC,* 169 Md.App. 355, 371–72, 901 A.2d 249 (2006) (holding that the issue of the applicability of Section 8–211 of the Real Property Article to the facts of the case had not been preserved for appellate review where the issue was raised for the first time in the appellant's motion to alter or amend the judgment under Rule 2–534); *see also Brown v. Contemporary OB/GYN Associates,* 143 Md.App. 199, 248, 794 A.2d 669 (stating that a "party who does not raise an issue at trial, and later pursues the point in a post-trial motion, is precluded from raising the substantive issue on appeal."), *cert. denied,* 369 Md. 659, 802 A.2d 438 (2002).

This Court, however, does have the discretionary authority under Rule 8–131(a) to review issues not raised at trial. Rule 8–131(a) states:

> (a) **Generally.** The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

"The second sentence of Rule 8–131(a) sets forth the general proposition that an appellate court *ordinarily* will not consider an issue that was not raised or decided by the trial court." *Jones v. State,* 379 Md. 704, 712, 843 A.2d 778 (2004) (emphasis in original). "Reposed in the appellate courts . . . is

a discretion nevertheless to decide the issue, exercisable, *inter alia*, when an appellate ruling would be desirable for trial court guidance." *Burden v. Burden*, 179 Md.App. 348, 355, 945 A.2d 656 (2008).

 Although there exists "no fixed formula for the determination of when discretion should be exercised," or any "bright line rules to conclude that discretion has been abused," we are guided by Rule 8–131(a)'s "twin goals" in deciding whether to exercise our discretion: (1) "whether the exercise of its discretion will work unfair prejudice to either of the parties," and (2) "whether the exercise of its discretion will promote the orderly administration of justice." *Jones*, 379 Md. at 713–15, 843 A.2d 778.

Turning to the facts of the instant case, we first ask whether the exercise of our discretion will unfairly prejudice either party. The issue of the trial court's authority to award back pay and benefits is a pure legal question and "does not depend on the presentation of additional evidence." *Gen. Motors Corp. v. Seay*, 388 Md. 341, 364, 879 A.2d 1049 (2005). Both parties, Cave and Elliott, have fully presented their views on the issue to this Court in their briefs. We conclude, therefore, that neither party is prejudiced by the exercise of our discretion.

Second, we ask whether our review will promote the orderly administration of justice. Although we firmly adhere to the requirement that issues "be brought first to the attention of the trial court so that the trial court may pass upon it in the first instance," *Jones*, 379 Md. at 714, 843 A.2d 778, in our view, the determination of whether the circuit court is authorized to award back pay and benefits under the LEOBR is "desirable for trial court guidance," because "the problem presented here, and application of the analytical framework required to resolve it are highly likely to recur." *Burden*, 179 Md.App. at 355, 945 A.2d 656.

Having considered the "twin goals" of Rule 8–131(a), we choose to exercise our discretionary authority to review Cave's argument, notwithstanding his failure to preserve it.

For the foregoing reasons, we deny Elliott's motion to dismiss this appeal.

## DISCUSSION

## I.

## LEOBR

Cave contends that the circuit court acted outside of its statutory authority under P.S. § 3–105(a) when it awarded Elliott payment of back pay and benefits, because "such payment is not a right protected by the LEOBR." [5]

■ "[W]here an order involves an interpretation and application of Maryland constitutional, statutory or case law, [an appellate court] must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review." *Schisler v. State,* 394 Md. 519, 535, 907 A.2d 175 (2006). As the question before us involves the interpretation and application of the LEOBR, we shall review the case *sub judice* under a *de novo* standard of review.

"The Maryland General Assembly enacted the LEOBR in 1974 for 'the purpose of providing that all law enforcement officers have certain rights,' 1974 Md. Laws, Chap. 722, and for 'provid[ing] a law-enforcement officer . . . with *substantial*

---

5. In his brief, Cave also argues that the State of Maryland's sovereign immunity bars the award of back pay and benefits to Elliott, who, as a county sheriff, is a State constitutional officer. Although Cave concedes in his brief that Howard County is "responsible for funding the offices of [its sheriffs], including payment of salary and benefits," Cave asserts that the court's award invokes sovereign immunity because the State— not Howard County—is "the party responsible for paying the award," under Section 9–108(a)(1) of the Maryland Code (2009), State Finance and Procurement Article. At oral argument before this Court, however, Cave's counsel conceded that Section 9-108 does not apply to a LEOBR action. Cave's counsel stated further that, if there is an obligation to pay the award of back pay and benefits, Howard County and the State would have to litigate the issue of which party is responsible for payment in a subsequent action. In light of Cave's position at oral argument, we consider Cave's argument on sovereign immunity abandoned, and therefore it will not be addressed in this opinion.

*procedural safeguards* during any inquiry into his [or her] conduct which could lead to the imposition of a disciplinary sanction.'" *Md–Nat'l Capital Park & Planning Comm'n v. Anderson*, 395 Md. 172, 183–84, 909 A.2d 694 (2006) (footnotes omitted) (emphasis and alteration in original) (quoting *Miner v. Novotny*, 304 Md. 164, 173, 498 A.2d 269 (1985)). In *Miller v. Baltimore County Police Dep't.*, 179 Md.App. 370, 946 A.2d 1 (2008), we recently had occasion to discuss the LEOBR:

> Maryland's [LEOBR] [was] enacted with the purpose to guarantee that police officers are afforded certain procedural safeguards during any investigation and subsequent hearing which could result in disciplinary action. The law was enacted in 1974, several years after two Supreme Court cases, *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562[ ] (1967), and *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082[ ] (1968), provided law enforcement officers with procedural protections under the Fifth Amendment privilege against self-incrimination and the Fourteenth Amendment due process clause of the U.S. Constitution.
>
> Following *Garrity* and *Gardner*, and in light of continuing abuses of police officers' privilege against self incrimination, members of Congress, between 1970 and 1977, unsuccessfully attempted to enact a federal law enforcement officers' bill of rights. The unsuccessful attempts served as an impetus for state statutes providing law enforcement officers' bills of rights, however, and in 1974, Maryland became the first state to enact such a law.

*Id.* at 380–81, 946 A.2d 1, *cert. denied*, 405 Md. 349, 952 A.2d 225 (2008).

 One of the procedural protections provided by the LEOBR is the right of a law enforcement officer to a hearing before a hearing board prior to the taking of any disciplinary action resulting from an investigation or interrogation of the officer. *Anderson*, 395 Md. at 184, 909 A.2d 694. Section 3–107(a)(1) provides:

Except as provided in paragraph (2) of this subsection and § 3–111 of this subtitle, if the investigation or interrogation of a law enforcement officer results in a recommendation of demotion, dismissal, transfer, loss of pay, reassignment, or similar action that is considered punitive, the law enforcement officer is entitled to a hearing on the issues by a hearing board before the law enforcement agency takes that action.

Another procedural safeguard, which is central to the resolution of the instant appeal, is codified at P.S. § 3–105. That section guarantees a law enforcement officer the right, when a right under the LEOBR is denied, to apply to the circuit court for a show cause order directing the law enforcement agency to show cause why the officer should not be afforded that right. Section 3–105 states:

(a) *In general.*—A law enforcement officer who is denied a right granted by this subtitle may apply to the circuit court of the county where the law enforcement officer is regularly employed for an order that directs the law enforcement agency to show cause why the right should not be granted.

(b) *Conditions.*—The law enforcement officer may apply for the show cause order:

(1) either individually or through the law enforcement officer's certified or recognized employee organization; and

(2) at any time prior to the beginning of a hearing by the hearing board.

In construing P.S. § 3–105, we have noted that its purpose " 'is not to review what the trial board or police chief *has done* but to assure that the police agency *will do* what the law requires.' " *Mass Transit Admin. v. Hayden,* 141 Md.App. 100, 110–11, 784 A.2d 627 (2001) (emphasis in original) (quoting *Cochran v. Anderson,* 73 Md.App. 604, 613, 535 A.2d 955 (1988)). We have also stated that P.S. § 3–105 was designed "to enforce the accused officer's rights under the [LEOBR], not to restrict the [law enforcement] agency's legitimate right

to discipline errant officers." *Sewell v. Norris,* 148 Md.App. 122, 131, 811 A.2d 349 (2002).

■ Cave argues that "the circuit court went far beyond the plain language of the show cause provision" when it ordered the payment of back pay and benefits in conjunction with Elliott's reinstatement. We recognize that by its plain language, P.S. § 3–105 provides a law enforcement officer only with the ability to apply to the circuit court for an order directing the law enforcement agency to show cause why the officer's rights under the LEOBR should not be granted. Section 3–105 is silent, however, as to whether the court, upon entering a show cause order, can (1) hold a show cause hearing in which the parties produce evidence and/or present argument regarding whether the officer has been denied a right under the LEOBR, (2) issue a ruling, stating whether the officer's right has been denied, and (3) upon finding a denial of a right under the LEOBR, grant relief to the officer.

Cave concedes that P.S. § 3–105 authorizes the court to hold a show cause hearing and to issue a ruling. As to the court's authority to grant relief, however, Cave contends that the court was limited to providing Elliott "the rights guaranteed by the LEOBR—namely, the right to be formally charged and those charges heard by an administrative hearing board." Cave asserts that, by ordering the payment of back pay and benefits, "the circuit court effectively read into the language a remedy that the legislature never intended."

In two prior cases, we have been called upon to construe the language of Maryland Code Article 27, section 734, the predecessor to P.S. § 3–105.[6] *See Hayden,* 141 Md.App. at 111–12, 784 A.2d 627; *Cochran v. Anderson,* 73 Md.App. 604, 613, 535 A.2d 955 (1988). In both instances, the plain language of section 734 did not explicitly grant the circuit court the authority in question; nevertheless, we concluded that section

---

6. Section 3–105 was derived without substantive change from former Art. 27, § 734. *See* Revisor's Notes to P.S. § 3–105.

734 necessarily encompassed such authority. We examine each case in turn.

In *Cochran,* the appellee was, *inter alia,* suspended without pay from his position as a police officer for the Maryland National Capitol Park and Planning Commission ("the Commission"). 73 Md.App. at 606–07, 535 A.2d 955. When the Commission repeatedly postponed the trial board hearing on the appellee's charges, leaving the charges against him unresolved for more than a year, the appellee filed an action in circuit court asserting that his right under the LEOBR to a prompt trial board hearing and resolution of the charges had been denied. *Id.* at 608–10, 535 A.2d 955. As relief, the appellee sought an order terminating the Commission's investigation and prosecution of his charges. *Id.* at 609, 535 A.2d 955. The court issued a show cause order under section 734 and, after a hearing, granted the appellee most of the relief requested. *Id.* at 611, 535 A.2d 955. The court entered an order directing the Commission and the Commission's Director of Parks ("the Director") "to terminate all investigations, hearings, and other proceedings under LEOBR, and [ ] to reinstate [the appellee] to his former status with all pay increments to which he would be entitled but for the investigation." *Id.*

The Commission and the Director appealed the court's order, complaining, *inter alia,* that the court had no authority under section 734 to enter its order. *Id.* at 612, 535 A.2d 955. Although we recognized that " § 734 says nothing about the authority of a court to call a halt to administrative proceedings; and, ordinarily, that would be a wholly inappropriate thing for a court to do," we held that under the circumstances of the case, section 734 "must necessarily include" the authority of the court to terminate the administrative proceeding and reinstate the appellee to his former status. *Id.* at 613, 606, 535 A.2d 955. We added:

**In most instances, injunctive or mandamus relief will suffice; the court can order the agency to act in conformance with the law and, if necessary, enforce its order through contempt or other appropriate proceed-**

ings. **But** where, as here, the agency's own rules require a prompt hearing and the evidence shows that, for some 15 months, despite constant demands, several promises, and one earlier court appearance, the agency has steadfastly and wrongfully flouted that requirement, **the court must also have the power to enforce the law by terminating the proceeding.**

*Id.* at 614, 535 A.2d 955 (emphasis added).

In *Hayden,* an administrative hearing was scheduled before a hearing board to consider charges against the appellee pursuant to the LEOBR. 141 Md.App. at 104, 784 A.2d 627. At a meeting, the hearing board refused to grant the appellee's request to issue the appellee a witness summons for a witness who was also serving as the Board Chairman. *Id.* at 105–106, 784 A.2d 627. The appellee advised the board members that he was going to petition the circuit court under section 734 for an order "to show cause why he should not be afforded his rights under the LEOBR to call witnesses of his choice." *Id.* at 106, 784 A.2d 627 (internal quotations omitted). The board decided to sit in adjournment, "and all parties agreed to await the circuit courts' decision on [the appellant's] section 734 petition." *Id.*

Nevertheless, the hearing board reconvened before the circuit court held a hearing on the appellee's petition. *Id.* The board found the appellee guilty of three charges and recommended a 14–day suspension, and the police chief thereafter ordered the appellee's suspension. *Id.* at 107, 784 A.2d 627. More than one year after the hearing board rendered its recommendation, the circuit court issued a decision on the appellee's petition, reversing the hearing board's denial of the appellee's right to summon a witness, vacating the disciplinary order, and remanding for a new administrative hearing. *Id.*

In considering whether section 734 was the proper vehicle for the appellee to seek a court order vacating the board's decision, *id.* at 109–10, 784 A.2d 627, we acknowledged that "the plain language of section 734 . . . does not speak directly to the question of what should happen to the underlying

administrative proceeding while a section 734 petition is pending in circuit court." *Id.* at 111, 784 A.2d 627. Construing section 734 in light of its objectives and purpose and looking to our decision in *Cochran, id.,* we concluded that, "although section 734 does not grant the circuit court explicit authority to vacate an administrative decision that resulted from an improper denial of an officer's procedural rights under LEOBR, section 734 must necessarily include that authority." *Id.* at 112, 784 A.2d 627. We reasoned in part that "[a]ny other interpretation would render section 734, and an officer's right to a pre-hearing remedy, a nullity." *Id.*

Consistent with our holdings in *Cochran* and *Hayden,* we are also of the view that, when the circuit court finds that an officer's right under the LEOBR has been denied, P.S. § 3–105 authorizes the court to grant or vindicate that right. In *Cochran,* the officer had the right to a prompt trial board hearing and resolution of the charges against him, which right the trial court found had been denied by the agency for over a year. 73 Md.App. at 614, 535 A.2d 955. This Court held that the trial court had the authority under the statute not only to grant that right by ordering the agency to act in conformance with the law, but, where the agency "simply [was] unwilling to comply with the law," *id.* at 613, 535 A.2d 955, "to enforce the law by terminating the proceeding." *Id.* at 614, 535 A.2d 955. In *Hayden,* the officer had the right under the LEOBR to summon a witness to testify at his disciplinary proceeding before the trial board, which was denied by the trial board. 141 Md.App. at 108, 784 A.2d 627. The trial board, however, proceeded to find the officer guilty of the charges against him before the circuit court rendered its decision. *Id.* at 107, 784 A.2d 627. We held that the trial court had the authority to grant the right to summon a witness to a disciplinary proceeding by vacating the disciplinary decision and remanding for a new administrative hearing, because "[t]he denial of the right tainted the results of the administrative hearing" by excluding the witness' testimony. *Id.* at 113, 784 A.2d 627.

In the case *sub judice,* Elliott had the right under Section 3–107(a)(1) of the LEOBR to a hearing before a hearing board

prior to the Sheriff's Office taking any disciplinary action resulting from an investigation or interrogation. The trial court found that Elliott had been denied this right when the Sheriff's Office terminated his employment without affording him a pre-termination hearing before a hearing board. To afford Elliott the right that he was denied, the court reinstated him to his former position as a Deputy Sheriff, including the payment of all back pay and benefits. To do anything less, in our view, would not have granted or vindicated the right that Elliott was denied.

To have ordered a hearing before a hearing board without reinstating Elliott as a Deputy Sheriff would have been a meaningless act, because the hearing was required by P.S. § 3–105 to have been held *before* his termination. To have ordered such hearing with reinstatement, but without back pay and benefits, also would not have granted or vindicated Elliott's right, because he was entitled to a hearing before any loss of salary or benefits. Stated otherwise, the only way for Elliott to have been granted the right that he was denied was to place him in the same position as he would have been prior to his termination, namely, a Deputy Sheriff having received full pay and benefits. Therefore, we hold that P.S. § 3–105 authorizes the circuit court to order reinstatement with all back pay and benefits where a law enforcement officer is denied the right under P.S. § 3 –107(a)(1) to a hearing before a hearing board prior to the taking of disciplinary action by the law enforcement agency.

## II.

### Equity Jurisdiction

Even if the circuit court did not have the statutory authority under P.S. § 3–105 to award Elliott full back pay and benefits, the court retained the "Constitutionally-based and statutorily-recognized, equitable jurisdiction" to provide complete relief. *See In re Heilig*, 372 Md. 692, 712, 816 A.2d 68 (2003). Article IV, § 20 of the Maryland Constitution provides Maryland's circuit courts with "all the power, authority and jurisdiction,

original and appellate, which the Circuit Courts of the counties exercised on [November 4, 1980], and the greater or lesser jurisdiction hereafter prescribed by law." The General Assembly has implemented this constitutional provision in Maryland Code (1974, 2006 Repl.Vol.), § 1–501 of the Courts and Judicial Proceedings Article ("C.J."). *In re Heilig,* 372 Md. at 712, 816 A.2d 68. Section 1–501 provides that each circuit court "has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and by the law, except where by law jurisdiction has been limited or conferred exclusively upon another tribunal."

The application of the circuit court's equity jurisdiction in *In re Heilig* is instructive to our analysis of the instant appeal. *Id.* at 692, 816 A.2d 68. In *In re Heilig,* the Court of Appeals considered, *inter alia,* whether the circuit court has jurisdiction to grant a petition requesting that the court change the petitioner's sexual designation from male to female. *Id.* at 694–95, 816 A.2d 68. The statutory provision relied on by the petitioner, by its terms, authorized the circuit courts to enter gender-change declarations to persons born in Maryland. *Id.* at 718–19, 816 A.2d 68. The petitioner, however, was born outside of Maryland. *Id.* at 693, 816 A.2d 68. The Court found that "[t]he fact that [the statutory provision] directly operates only with respect to a Maryland birth certificate does not detract in the least from the legislative recognition of jurisdiction to entertain and grant petitions such as the one before us." *Id.* at 719, 816 A.2d 68. The jurisdiction recognized by the Court was not conferred solely on the basis of the statute, "but rather on the [Court's] conclusion that [the petitioner's] action fell within the general equity jurisdiction of the court." *Id.* at 720, 816 A.2d 68. Accordingly, the Court held that the circuit court had jurisdiction to rule on the petition. *Id.* at 720–21, 816 A.2d 68.

Discussing the equity jurisdiction of the circuit courts, the Court of Appeals observed:

Equity jurisdiction initially encompassed the enforcement of rights not otherwise enforceable, and the provision of

remedies not otherwise available, in the common law courts—appeals to Justice. Over time, the initial scope of that jurisdiction has expanded; many of the actions, rights, and remedies now recognized as within the domain of the equity courts were not there in the beginning but were added through the historical development and expansion of equity jurisprudence, often by statute. As Justice Story observed, "every just order or rule known to equity courts was born of some emergency, to meet some new conditions, and was, therefore, in its time, without a precedent." 1 JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE § 95 at 96 (14th ed.1918).

*Id.* at 712–13, 816 A.2d 68.

 As indicated in *In re Heilig,* the court's equity jurisdiction in the case *sub judice* is necessarily superimposed on P.S. § 3–105. When the circuit court finds that an officer is denied a right under the LEOBR pursuant to a show cause order, the court's authority includes those equitable powers necessary to grant or vindicate the right denied. It is inconsistent with the concept of equity jurisdiction to limit the circuit court's authority in ruling on a show cause order such that the relief awarded will not make the officer whole. Consequently, we hold that the circuit court, upon invocation of its equity jurisdiction, may grant such equitable remedies as are necessary to provide full relief to the officer as a result of the procedural violation. *See Beard v. S/E Joint Venture,* 321 Md. 126, 143, 581 A.2d 1275 (1990) (recognizing the equitable maxim that "once equity has jurisdiction, it will grant complete relief"); *Williams v. Williams,* 305 Md. 1, 8, 501 A.2d 432 (1985) (stating that "once equitable jurisdiction has attached the equity court will give full and complete relief").

In granting Elliott the right to an administrative hearing before a hearing board, without reinstatement and the payment of full back pay and benefits, would not have provided Elliott with complete relief, because Elliott was entitled under the LEOBR to a hearing while he was still a fully compensat-

ed Deputy Sheriff. An award of back pay and benefits, as a form of equitable relief awarded under the equity jurisdiction, thus was proper to provide Elliott with complete relief.[7] *See, e.g., Montgomery County v. Broadcast Equities, Inc.,* 360 Md. 438, 444–45, 758 A.2d 995 (2000); *State Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.,* 149 Md.App. 666, 685, 818 A.2d 259 (2003). Therefore, we hold that the circuit court, in finding that Elliott was denied his right under the LEOBR to a hearing before a hearing board before any disciplinary action was taken, had the authority in equity to award Elliott payment of full back pay and benefits.

## III.

### Mitigation of Damages

Cave argues that the circuit court erred in awarding back pay and benefits when Elliott "had a duty to mitigate damages," and Cave "is entitled to discover what, if any, efforts [ ] Elliott made to do so." In so arguing, Cave relies on *Volos, Ltd. v. Sotera,* 264 Md. 155, 286 A.2d 101 (1972), in which the Court of Appeals articulated the law on mitigation of damages in an action for wrongful discharge:

> The general rule is well established in this State that a wrongfully discharged employee is entitled to recover damages to the extent of the stipulated salary for the stipulated period, less the amount he actually earned during the period, or the amount he might have earned after his discharge by the exercise of reasonable diligence in seeking other employment in the same or similar business.

*Id.* at 175, 286 A.2d 101 (quotations omitted).

Elliott responds that Cave's argument "confus[es] back pay ordered as a measure of damages ... with back pay ordered

---

7. Cave also argues that the circuit court's entry of judgment for payment of back pay and benefits without specifying a sum to be paid does not constitute a money judgment and thus has no effect. Our review of the record reveals that the court did not enter a money judgment. Rather, the court granted Elliott equitable relief in the form of full back pay and benefits.

to undo an administrative act that has been determined to be a nullity, which *is* the case in the instant matter." (Emphasis in original). Further, Elliott insists that "[t]raditional laws of damages and breach of contract have no application herein."

The mitigation of damages doctrine is "[t]he principle requiring a plaintiff, after an injury or breach of contract, to use ordinary care to alleviate the effects of the injury or breach. If the defendant can show that the plaintiff failed to mitigate damages, the plaintiff's recovery may be reduced.— Also termed *avoidable-consequences doctrine.*" Black's Law Dictionary 1018 (7th ed.1999) (emphasis in original). When it is determined that the doctrine applies, the burden is necessarily on the defendant to prove that the plaintiff failed to use "all reasonable efforts to minimize the loss he or she sustained." *Schlossberg v. Epstein,* 73 Md.App. 415, 422, 534 A.2d 1003 (1988). We have explained:

> Because it is aimed primarily at benefitting a defendant, the burden of proving that a loss could have been avoided by the exercise of reasonable effort on the part of the plaintiff is upon the defendant, whose breach of duty caused the damages suffered by the plaintiff. Thus, it is clear that the doctrine does not place any duty on a plaintiff or create an affirmative right in anyone.

*Id.* (citations omitted).

We need not decide whether the doctrine of mitigation of damages applies to the case *sub judice,*[8] because, even if it did, Cave never adduced any evidence that Elliott failed to use reasonable efforts to mitigate the losses he sustained as a result of his termination. Moreover, because Cave had at least eight months to conduct discovery, and the record reveals that no discovery was taken or even requested, Cave cannot now complain that he should have been entitled to discovery of Elliott's mitigation efforts. Finally, Cave did not

---

8. "The duty to mitigate damages is most traditionally employed in the areas of tort and contract law," as the doctrine is "concerned with the compensatory aspect of tort and contract law." *Comm'r of Transp. v. Weiswasser,* 149 N.J. 320, 693 A.2d 864, 868–69 (N.J.1997).

preserve for our review the issue of mitigation of damages and his right to discovery of the same, because the issue was raised only in Cave's post-trial Motion for Reconsideration, and not at the hearing on the show cause order. *See Steinhoff*, 144 Md.App. at 483–84, 798 A.2d 1195; *Brown*, 143 Md.App. at 248, 794 A.2d 669.

**JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**