## SAPERO & SAPERO ET AL. *v.* BEL AIR PLUMBING & HEATING CONTRACTORS, INC. ET AL.

[No. 527, September Term, 1978.]

*Decided January 16, 1979.*

The cause was argued before MOYLAN, LOWE and MASON, JJ.

*Robert Allen Sapero,* with whom were *Sapero & Sapero* on the brief, for appellants.

*Paul G. Leiman,* with whom were *Clarence L. Fossett, Jr.,* and *Fossett & Brugger* on the brief, for appellee Maye H. Irwin.

LOWE, J., delivered the opinion of the Court.

The beneficent effort of a trial judge to overcome a clerk's procedural oversight which precluded appellants' right of review by this Court provides a provocative scenario for an otherwise bland appeal. Except to the litigants, the $4,000 in controversy is not nearly as important as the possible procedural loss of appellate review. We are asked by appellants to decide if the trial judge's factual decision was correct, but our right to hear this appeal, from the Circuit Court for Harford County, is challenged by appellee as well as the trial judge below. We will attempt to simplify the confusing scenario by restricting the recitation of facts to the specified issues upon appeal. Because the factual issue and the procedural obstacles are interwoven, we will face the appellants' substantive question first, obviously indicating that we will ultimately find that we have jurisdiction to hear the appeal. Upon review of the evidence, we had no difficulty in affirming the trial judge on what amounts to an attack on the sufficiency of the evidence under Md. Rule 1086.

The case involves judgment creditors seeking to attach funds of appellee Irwin,[1] contended to be those of the judgment debtors. Appellants[2] were judgment creditors of appellees, Bel Air, Inc. and of the Lovelaces[3] who had previously contracted with appellee Irwin (and others) for the purchase of real property. The sale of the property was never consummated. Seeking to satisfy their judgment, appellants sought to attach the deposit paid by the judgment debtors to

---

1. Maye H. Irwin.
2. Robert Allen Sapero and Sapero & Sapero.
3. Bel Air Plumbing & Heating Contractors, Inc.; Fielden Lovelace and Mary Lovelace.

Irwin at the time they contracted to buy that property. Contending that upon default by the buyers they had forfeited that deposit to her, Mrs. Irwin responded with a plea of *nulla bona,* that she had no assets of Bel Air or the Lovelaces in her hands. The very narrow sufficiency question justifying a very thick record extract condenses to whether the language used in a letter written by Mrs. Irwin's attorney to the buyers (appellants' debtors), in response to a letter advising that the buyers could not settle, was sufficient to declare and effect a forfeiture of the deposit money. After declaring the inability to settle to be a breach, and declining to consent to a rescission, there followed in the Irwin response the sentence in controversy which appellants contend was insufficient to declare a forfeiture:

"Although only a partial deposit (and not the full deposit set forth in the contract) was made, Sellers will retain this deposit."

A judgment creditor seeking to attach assets by garnishment is limited to the rights of the judgment debtor as against the garnishee. *Messall v. Suburban Trust,* 244 Md. 502, 506-507 (1966). The issue of whether the evidence (including that language) effected a forfeiture, is therefore essential to appellants' case. If it did, the deposit would become funds of the garnishee who would then have no funds of the debtors for which the debtors themselves could have sued; and consequently, none subject to attachment by a creditor of the debtors. *Walsh v. Lewis Swim. Pool Constr.,* 256 Md. 608, 610 (1970). Concisely (if elliptically) providing the historic legal background culminating in that forfeiture question, appellants point out that the common law rule is recognizably harsh:

"[W]here the vendee of real property makes part payment on the purchase price but subsequently fails to fulfill the contract without justifiable excuse, he cannot recover the payment if the vendor is ready and willing to fulfill his part of the contract, even though the vendor may have made a profit by reason

of the default." *Great United Realty Co. v. Lewis,* 203 Md. 442, 446 (1954).

This forfeiture right prevails, "even though the vendor may have made a profit by reason of the default." *Quillen v. Kelley,* 216 Md. 396, 402 (1958).[4]

Appellants contend, however, that because of the availability of elective remedies the default does not effect a forfeiture until the forfeiture is declared. Although the cases they cite for that principle were decided upon the specific language in the contracts in those cases, *Chas. H. Steffey, Inc. v. Derr,* 275 Md. 121, 125 (1975); *Casey v. Jones,* 275 Md. 203, 205-206 (1975), we will accept appellants' premise for purposes of this case.

In doing so, we must affirm the trial judge nonetheless. The above quoted language in its context, together with all the other evidence in the case, was sufficient to support the factual conclusions of the factfinder. *Operations Research v. Davidson,* 241 Md. 550, 556 (1966). Although the factfinding judge here did not expressly state that he had concluded that a forfeiture was effected, it was implicit in his ruling in favor of appellee, especially since the issue was pointedly argued as part of appellants' case below.

But we have put the cart before the horse. Appellee Irwin contends that we have no right to decide this case, even in her favor. The trial judge whose nunc pro tunc order gave birth to this issue, no longer holds that view; however, he has chosen consistency over prudence and invoked Md. Rule 1013 to strike the order for appeal, thereby strengthening appellee's contention. The events leading to this state of confusion came by way of a simple oversight.

The trial judge decided this case and entered judgment nisi causa on September 23, 1977, presumably causing an entry of final judgment "as of course" by the clerk upon expiration

---

4. Although the appellants' brief alludes to the fact that appellee may have suffered no loss by virtue of a subsequent sale, the issue of unjust enrichment was not pressed by appellants. Certainly the evidence did not prove that the deposit retained exceeded appellee's damage, especially in light of the 7% deposit. Chas. H. Steffey, Inc. v. Derr, 275 Md. 121, 125-126 (1975).

of three days. No motion for new trial having been filed, Md. Rule 567 a and f, appellants filed an order for appeal on September 27, 1977. There followed the series of events in which appellants have become entangled.

1) Nearly three months later, on November 22, 1977, the Circuit Court for Harford County entered "Judgment Absolute *Nunc Pro Tunc* as of September 29, 1977," presumably hoping to avoid a dismissal of the appeal.

2) Four days later, on November 26, 1977, we dismissed the appeal as premature, no final judgment having been entered to our knowledge.

3) On December 1, 1977, notwithstanding the nunc pro tunc entry, the clerk entered anew a "Judgment Absolute . . . in accordance with the Mandate of the Court of Special Appeals."

4) On December 9, 1977, appellants again filed an order of appeal.

5) Meanwhile, appellee moved to strike the December 1, 1977 docket entries and to strike or not receive the order for appeal.

6) Given the opportunity for reflection, the trial judge correctly assessed the problems and by a well thought out opinion pointed out the problems as well as his own errors. The trial judge correctly observed that he had erroneously ordered entry of the judgment nunc pro tunc.

> "My ruling, if allowed to stand, would have the effect of denying the Plaintiffs the right to appeal because their order for appeal, filed December 9, 1977, would have been more than thirty days after the effective date of the judgment absolute. The garnishee has urged me to pursue this result by modifying the December 1st docket entry to delete reference to a redundant second judgment absolute.
>
> After reading the cases, I am convinced that my ruling from the bench was wrong. The statute, Courts and Judicial Proceedings Article, Section 12-301 provides that a party may appeal from a final

judgment '*entered* in a civil or criminal case by the Circuit Court'. Maryland Rule 1012.a., however, provides that the order for appeal shall be filed within thirty days *from the date of the judgment appealed from,* no mention being made of the question of whether or not 'entry' is a necessary prerequisite of a judgment absolute. The cases are not particularly helpful as to the specific problem. *Merlands Club v. Messall,* 238 Md. 359 (1965) set forth the general rule, holding, in the language of the case, that the order of appeal filed 'prior to the entry of the judgment absolute was premature and ineffective'. In that case, however, the judgment absolute was duly entered at the end of the three day period. In *Aronstamn v. Coffey,* 259 Md. 47 (1970), an appeal was taken before the actual entry of the judgment absolute although the clerk should have entered the judgment. The appeal was deemed premature but the Court of Appeals considered the case in order to avoid expense and delay. In that case, however, the entry of the judgment absolute should have been made, not because of the passage of time, but because the Court overruled a motion for new trial. But again, the entry by the clerk was a ministerial act, just as it was here, yet the Court of Appeals impliedly ruled that the crucial event was the entry by the clerk.

My direction of November 22, 1977, directing entry of judgment absolute as of September 29, 1977, was entered in the spirit of *Keystone Engineering Corporation v. Sutter,* 196 Md. 620 (1950) but, unlike the situation there, here there was no agreement of counsel and the appellate court was not aware of my action when the mandate was issued.

Under the rationale of *Lang v. Catterton,* 267 Md. 268 (1972), it seems that a trial court may retain jurisdiction after an appeal has been entered if the retention of such jurisdiction does not affect the

status of the appeal. The entry of November 22, 1977 would have the effect of foreclosing the Plaintiffs' right of appeal because more than thirty days would have elapsed since the rendition of judgment absolute. This being the case, I now feel that the direction of that entry may have been beyond my power. But the deed is done and the extent of a trial court's powers can only be decided by appellate courts."

But presumably overtaken by the hobgoblin of consistency, he struck the order of appeal invoking Md. Rule 1013 and "corrected" the December 1, 1977 docket entry.

"I will, nonetheless, GRANT the motion of the garnishee to strike the order for appeal, under Rule 1013, and will correct the December 1 docket entries as suggested by the garnishee. Hopefully, this will place the matter in a position for consideration by the Court of Special Appeals of the issues previously presented, in such a way as not to again cause the Plaintiffs to be thrown out of the appellate court, this time for failure to comply with the time limits of Rule 1025."

7) Appellants prudently appealed *everything*.[5]

To the trial judge's erudite opinion we must add a few hindsight reflections. That there be no further question, the right to appeal is a substantive right statutorily given from

---

5. "Please enter an Appeal to the Court of Special Appeals of Maryland on behalf of the Plaintiffs in the above captioned matter from the following:

1. The Trial Court Order of February 10, 1978, striking the Order of Appeal filed December 9, 1977.

2. The Trial Court Order of February 10, 1978, striking the Docket Entry of Judgment Absolute on December 1, 1977, which was preserved by the Order of Appeal filed on December 9, 1977.

3. The entry on November 22, 1977, of Judgment Absolute, Nunc Pro Tunc to September 29, 1977, which was preserved by the Order of Appeal filed on December 9, 1977.

4. The decision of the Trial Court on the merits entered Judgment Nisi Causa September 23, 1977, and made Judgment Absolute on either September 29, 1977, November 22, 1977, December 1, 1977, or February 10, 1978."

a "final judgment *entered*," not a final judgment rendered. That was implicit in the holding of *Eastgate Associates v. Apper,* 276 Md. 698 (1976) which held that there was no appellate jurisdiction when there was no *entry* of a final judgment. *Id.* at 699.

> "In the instant case, the appeal was taken from the instruction granting a directed verdict. Such an instruction is equivalent to a jury verdict, *see* Rule 552 e, and is analogous to the entry of a judgment *nisi* in an action tried by the court, *Merlands Club, Inc. v. Messall, supra,* 238 Md. at 362; Rule 564 b 1. As with a judgment *nisi,* a verdict, whether reached by jury or directed by the court, is not a final order. *See* Rule 567 f. '[I]t is indisputably clear that there is no right to appeal from a verdict,' *Montauk Corp. v. Seeds,* 215 Md. 491, 502, 138 A. 2d 907 (1958). *See,* additionally, *Hawkins v. GMAC, supra,* 250 Md. [146] at 148; *Merlands Club, Inc. v. Messall, supra,* 238 Md. at 362-363; *Md., Del. and Va. Rwy. Co. v. Johnson,* 129 Md. 412, 99 A. 600 (1916)." *Id.* at 701-702.

The procedural implementation of the right to appeal by the Court of Appeals under its rule making authority, (Md. Const. art. IV, § 18), had neither the intention of affecting the language of that statutory right nor authority to expand appellate jurisdiction when it used the term "judgment" generally in Md. Rule 1012 a. There must first be an appealable judgment for the rule to be applicable. Recognizing that prerequisite, the Court of Appeals prefaced its rule with the cautionary phrase: "Whenever an appeal . . . is permitted by law." It is "permitted by law" after judgment has been *entered.*

Judge Cameron's reflections upon *Aronstamn v. Coffey,* 259 Md. 47 (1970), may be somewhat misleading. In that case the Court of Appeals clearly held that the case *must be dismissed* because

> "[a]s of the time of appeal no final judgment had been entered, although the clerk should have entered judgment." *Id.* at 48.

That the Court answered the issue raised by way of dicta does not change the effect of the dismissal. Although *Aronstamn* was not mentioned in *Eastgate v. Apper,* it is in accord with the closing language in *Eastgate.*

> "In exceptional circumstances, however, a court may express its views on the merits of a case as *dicta. See, e.g., Hawkins v. GMAC, supra.* However, where appellate jurisdiction is absent, such statements by the appellate court can logically be no more than *dicta,* and it is improper for the order of the appellate court, and the opinion on which the order is based, to be made conclusive as to the points discussed." *Eastgate v. Apper,* 276 Md. at 704.

Only two further matters discussed by the trial judge need be mentioned. We do not agree that *Keystone Eng. Corp. v. Sutter,* 196 Md. 620 (1951), can any longer be authority for a nunc pro tunc entry of judgment to "correct" the record, even by agreement to expedite the hearing of an appeal prematurely entered. The court's power to change the record is severely restricted:

> "To make the Record speak the truth and conform to the facts is a common law power, and is incident to all courts of record, and essential to their efficient existence. This power may be exercised at any time, even if the Record has been transmitted on appeal to a superior court and the appeal is there pending. *Hays v. P., W. & B. R. R. Co.,* 99th Md. 420; *17th Enc. Pl. and Pr.,* 922; *Waters v. Engle,* 53 Md. 179. But in the exercise of such power the Court is authorized to make only such corrections as will make the record conform to the actual facts occurring in the progress of the cause, or in other words, make the Record speak the truth. It cannot so change the Record as to make it inconsistent with the facts, or make it state what is not true." *Md., Del. & Va. Rwy. Co. v. Johnson,* 129 Md. 412, 416 (1916).

The "actual fact" in this case is that final judgment was *not entered* on September 2, 1977; the "truth" is, that it should

have been, but that it was *not.* Nor was final judgment entered on November 22, 1977. That which *was* entered on that date was an improper order nunc pro tunc. Thus, no appeal could properly be taken then either. No final judgment was entered until December 1, 1977. As indicated, the right to appeal is activated after a final judgment *is* entered, not the time final judgment ought to have been entered. The circuit court lacked any authority to change those facts by retrospective rulings, which are suspect even when ordered within the limited authority to so act.

Although *Keystone* appears to be precedential authority for permitting us to hear premature appeals (at least by adding mutual assent), it could not be considered as such, even if all of the additional contingent factors acknowledged in that case had been complied with in this case.

> "In the case before us, there is no motion to dismiss the appeal. On the contrary, after argument, when counsel became aware of the lack of a judgment, application was made to the Judge of the Circuit Court for Kent County who heard the case, and, on December 21, 1950, a judgment was entered in favor of the defendant against the plaintiff for costs, *nunc pro tunc,* May 2, 1950, and an agreement of counsel is filed in the case to the effect that the docket entries showing the record of this judgment be included in the transcript sent to this court. As the case was fully argued, and all parties desire its decision on the merits, and as the effect of dismissing the case would only result in the appellant having to file a new appeal, with the consequent additional expense and delay, or, because of such expense, being denied an appeal, we think it is in the interest of justice to treat the appeal before us as one from the judgment entered *nunc pro tunc,* and we will so consider it." *Keystone Eng. Corp. v. Sutter,* 196 Md. at 626-627.

Both *Keystone Eng. Corp. v. Sutter, supra,* and the case it relied upon, *Kendall Lumber Co. v. State,* 132 Md. 93 (1918),

were cited in *Eastgate Associates v. Apper, supra,* as unexplainable contradictions to the premise that jurisdiction cannot be conferred by consent. 276 Md. at 700-701. That Judge Eldridge, writing for the Court in *Eastgate,* flagged those cases as such in the Court's first recognition of jurisdictional problems of premature appeals, indicates that the Court would disapprove them as authority for consensual circumvention just as it disapproved *Dackman v. Dackman,* 252 Md. 331 (1969) and *Blocher v. Harlow,* 268 Md. 571 (1973), as authority to circumvent utilizing the remand rules. *Eastgate Associates, supra,* at 703.

Prior to *Eastgate Associates v. Apper, supra,* various devices had been employed by the Court of Appeals and by this Court

> "to save judicial time and unnecessary [litigation] expense and in the belief that our action is in the best interest of the administration of justice." *Apper v. Eastgate Associates,* 28 Md. App. 581, 586 (1975).

The Court of Appeals acknowledged that both Courts had done this in the past despite the premature nature of the appeals, but pointed out that in none of the previous cases had there been any discussion of the devices relied upon to do so (in *Eastgate* Rules 871 and 1071)—"or of the jurisdictional problems involved." *Eastgate Associates v. Apper,* 276 Md. at 703. The Court of Appeals then expressly denounced the previous authority they had used to wink at the technical jurisdictional defect implicit in appealing prematurely.

> "To the extent that the above-cited cases support an assumption of appellate jurisdiction in the absence of an appealable order, they are disapproved." *Id.*

In light of the recognition that premature appeals are jurisdictional defects, we predict the same fate will befall *any* device used to acquire jurisdiction where none has been legislatively granted. Even appellate courts cannot grant jurisdiction to themselves.

It appears then that Judge Cameron was right that he was wrong, but wrong that he was wrong for the reason he stated.

He was qualifiedly right that a trial court may retain jurisdiction for limited purposes after an appeal, *Lang v. Catterton,* 267 Md. 268, 283-286 (1972), but, if we are right, he was wrong in believing that *Keystone Eng. Corp. v. Sutter, supra,* was authority to bestow jurisdiction where there was none.

We will, therefore, vacate the nunc pro tunc order of November 22, 1977, and the supplemental order of February 9, 1978 granting garnishee Maye H. Irwin's Motion Ne Recipiatur or To Strike Order for Appeal, striking and dismissing appellants' December 9, 1977 appeal pursuant to Md. Rule 1013,[6] granting Motion "To Correct Docket Entries and Related Relief," and striking the docket entry of December 1, 1977 entering final judgment. Vacating those orders leaves intact the docket entry of final judgment on December 1, 1977 and the propitious appeal from that judgment. We affirm that final judgment.

> *Orders dated November 22, 1977 and February 9, 1978, vacated.*
> *Judgment entered December 1, 1977, affirmed.*
> *Costs to be divided equally.*

---

**6.** The precise limitations and express reasons upon which a trial court has the authority to strike an appeal should not pass unnoticed.

"If the order for appeal has not been timely filed or if the clerk of the lower court has prepared the record as required by Rule 1026 (Record on Appeal) and the appellant has neglected or omitted to pay for such record, or has failed to deposit with the clerk of the lower court the filing fee as required by section d of Rule 1011 (How Appeal To Be Taken), or by reason of any other neglect or omission on the part of the appellant, the record has not been transmitted to this Court within the time prescribed pursuant to Rule 1025 (Record — Time for Transmitting), the lower court may *sua sponte* or upon motion, strike the order for appeal and take all proceedings as if such order for appeal had not been filed." Md. Rule 1013.