5 A.3d 1113

**Charles R. KEYS, Jr.**

**v.**

**STATE of Maryland.**

**No. 1716, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Sept. 20, 2010.

Peter A. Prevas (Prevas & Prevas, on the brief) Baltimore, MD, for appellant.

Jeremy M. McCoy (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: MEREDITH, GRAEFF and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

GRAEFF, J.

On September 15, 2008, in the Circuit Court for Carroll County, Charles R. Keys, Jr., appellant, pled guilty to seven counts of theft and identity fraud.[1] On counts 1, 2, 19 and 21,

---

1. Appellant pled guilty to the following counts:
   Count 1: Receiving property by stolen, counterfeit, or misrepresented credit card, with a value in excess of $500, in violation of Md.Code (2002), § 8–209 of the Criminal Law Article ("C.L.").
   Count 2: Engaging in a felony theft scheme in violation of C.L. § 7–104
   Count 4: Identity Fraud in violation of C.L. § 8–301(c)(2)(i)
   Count 18: Identity Fraud in violation of C.L. § 8–301(c)(2)(i)
   Count 19: Obtaining property by counterfeiting, theft, or misrepresentation in violation of C.L. § 8–206(a).

the court imposed concurrent sentences of 15 years, all but ten suspended, to be followed by five years on probation.[2] The court ordered that restitution be paid in an "amount to be determined within 60 days either by agreement or if not agreed to, then either party can request a restitution hearing before the Court." When the parties were unable to agree on restitution, the court held a restitution hearing and ordered appellant to pay restitution to multiple victims in the amount of $101,993.42.

On appeal, appellant presents one question for our review, which we have rephrased slightly:

Did the circuit court err in ordering appellant to pay $6,565.50 in restitution to Next Day Blinds and $38,123.16 in restitution to Williams–Sonoma?

For the reasons set forth below, we shall dismiss the appeal as untimely.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 15, 2008, appellant was facing 121 counts of identity theft, credit card fraud, and other theft related offenses involving many different victims. Appellant entered into a plea agreement, which provided that, in exchange for appellant's plea of guilty to seven counts, the court would "enter a sentence of a maximum time served of 10 years with whatever suspended period of time [the judge] considers appropriate as well as any applicable probation and or restitution." As indicated, the amount of restitution was "to be determined within 60 days," either by agreement, or, if no agreement could be reached, then after a restitution hearing.

The State presented a statement of facts "to corroborate the plea." The facts presented indicated that, between November

---

Count 20: Identity Fraud in violation of C.L. § 8–301(c)(2)(i)
Count 21: Obtaining property by counterfeiting, theft, or misrepresentation in violation of C.L. § 8–206(a)

**2.** The court imposed five-year suspended sentences on counts 4, 18, and 20.

2005 and February 2007, appellant engaged in a felony theft scheme, receiving goods with a value over $500 by "means of stolen and misrepresented credit cards" issued to numerous individuals. Appellant stole the following items:

> Swarovski Crystal, GPS units, kitchen and housewares merchandise, gift cards, jewelry, purses, shoes, clothing, blinds, air line flights and other miscellaneous items from William Sonoma, J. Crew, J. Jill, Brooks Brothers, Bass Pro Shops, Territory Head, Isabella Bird Company, Next Day Blinds, Ware Jewelers, Lowe's, Macy's, Zabos, Marshall Fields and other various merchants and or corresponding credit card company having a value of over $500 or greater in violation of [Md.Code (2002 Repl. Vol.), § 7–104 of the Criminal Law Article].

The statement of facts described appellant's actions as "an account take over scheme," explaining that, "[i]n all of their cases, the victim's credit cards themselves were still in the victim's possession but their credit card numbers were used by some person unknown to them," and that "[a]ll the merchandise ordered with the compromised credit card numbers were delivered to drop off points through Baltimore City Maryland." The investigation revealed that many of the victims had a common charge of $39 from a Baltimore City heating and air conditioning business called Cold Spring Company, Inc. Authorities eventually traced to appellant's wife a phone number that was used to obtain phone approval of credit card transactions, using Cold Spring Company's merchant ID number.

On March 7, 2007, police executed a search and seizure warrant for appellant and Ms. Keys' residence.[3] The search revealed numerous items that "were linked back to purchases made using stolen credit card numbers of Carroll County victims," "paperwork and computers linked to credit card thefts," in addition to "dozens of credit card numbers and owners' information." After contacting the victims, authori-

---

3. Ms. Keys also was charged in connection with the thefts.

ties found that approximately 99% of the victims had used their credit cards at a Great Clips Hair Salon in Westminster, Maryland. This led the police to believe that an employee at that salon "was stealing the identity of the credit card customers and relaying that information to" appellant.

The statement of facts indicated that Special Agent Lowman, a United States Secret Service Special Agent, conducted a forensic analysis of appellant's computer, and he determined that appellant used the computer for numerous fraudulent purchases. In particular, "Charles and Ericka Keys had used stolen credit card numbers to purchase items over the phone and via the internet totaling well in excess of $100,000. They also possessed dozens of personal—victim's personal identifying information which had not been used to purchase the items."

After determining that the State's facts corroborated appellant's guilty plea, the court found appellant guilty on all seven counts. The State nol prossed the remaining charges.

The court then inquired regarding the status of restitution. The State indicated that it needed more time to get exact figures from the retail victims. The court responded that it would "provide that [appellant] pay restitution in an amount to be determined," and that it would give the parties 60 days to agree to an amount. If an agreement could not be reached within 60 days, either party could "request a restitution hearing at which a restitution figure will be determined." The court then imposed the sentence of incarceration, to be followed by five years on probation, subject to the condition that appellant pay restitution in an amount "to be determined" within 60 days.[4] The court stated that the restitution would be determined "either by agreement or if not agreed to, then either party can request a hearing before the Court."

---

4. When the court subsequently ordered appellant to pay specific amounts of restitution to the various victims, it specified that the restitution was ordered both as a condition of his probation and as a term of his sentence.

On December 5, 2008, the State filed a Request for Restitution Hearing, stating that the parties were unable to reach an agreement. On June 15, 2009, the court held a hearing. The State advised the court that the parties agreed on "the total amounts for each of these companies that were compromised as a result of the theft scheme," but there was disagreement regarding "credit for the merchandise that was recovered and also the defendant's ability to pay."

David Siuta, the regional loss prevention manager with Williams–Sonoma, testified regarding Williams–Sonoma's loss. He accompanied authorities to appellant's residence during the execution of the search warrant to identify stolen merchandise belonging to Williams–Sonoma. Mr. Siuta found numerous Williams–Sonoma items that were connected to the stolen credit cards.

Mr. Siuta took these items to a Williams–Sonoma retail store to determine if the items were in resale condition, or if they were appropriate for donation to charity or trash. He explained that an item would be unsellable if it was used, which was the case with most of the items recovered from appellant's residence. The State introduced into evidence a list prepared by the store manager, indicating which items were to be disposed of or donated, and which items were "in sellable condition." The items that were able to be resold by Williams–Sonoma had a retail value of $908.95.

The total loss to Williams–Sonoma was $39,032.11. Williams–Sonoma sought restitution in the amount of $38,123.61, which reflected the difference between the total loss to the company and the $908.95 in merchandise that the company determined could be resold.

Jeffrey Schuster, a Detective with the Criminal Investigations Bureau of the Westminster Police Department, participated in the search of appellant's residence. He recovered custom-made blinds from Next Day Blinds, which were obtained through fraudulent transactions. Some of the blinds were hanging in the residence and some were still sealed. Detective Schuster notified Next Day Blinds, but the company

did not want the blinds. It released the blinds to the West-minster Police Department and sought restitution in the amount of $6,562.50. Detective Schuster testified that the items that were being held by the State Police, the State's Attorney, or by the Westminster Police would be resold, if possible. Any profits from these sales would apply as a credit to the restitution amounts ordered. The detective did not know how the blinds were going to be utilized by the police department, but he stated: "If they can be sold, they will be sold."

After Detective Schuster's testimony, the State and appellant's counsel stipulated that appellant was incarcerated and had no current source of income. The court then recessed and permitted appellant's counsel to submit further argument in writing, ordering the State to respond to that argument within 15 days of receipt.

On June 30, 2009, appellant filed a Memorandum in Response to State's Request for Restitution. In addition to arguing that the court should not issue a judgment of restitution because he did not have the ability to pay, appellant contended that, pursuant to Md.Code (2002), § 7–104(g)(1)(ii) of the Criminal Law Article ("C.L."), he had the option to restore the stolen property to the owner or pay for the property. He argued that "payment of value of the property is inappropriate where the property has been restored to the owner," and therefore, it was inappropriate for Williams–Sonoma to seek payment of the value of the items that were recovered. Similarly, with respect to Next Day Blinds, appellant suggested that the company's release of the property to the Westminster Police Department constituted a recovery of the items by Next Day Blinds, with a subsequent donation to the police, and therefore, he could not be required to pay for its value. He argued that he should not be required to pay the value of the blinds without an order that the blinds be returned to him.

On July 7, 2009, the State filed a memorandum in response. Initially, the State refuted appellant's contention that he did

not have the ability to pay the restitution amount. The State also asserted that appellant's interpretation of C.L. § 7–104(g)(1)(ii) was "not in conjunction with the restitution statute ... and is in disregard [of] the legislative history behind the restitution and theft statutes." The State argued that appellant did not meet his burden in challenging the restitution requested by Williams–Sonoma or Next Day Blinds.

On July 17, 2009, the circuit court ordered appellant to pay restitution, as a condition of his probation and as a term of his sentence, to multiple victims. Specifically, the court ordered appellant to pay $6,565.50 to Next Day Blinds and $38,123.16 to Williams–Sonoma. This order was entered on July 20, 2009, and on July 24, 2009, the court recorded civil judgments in these amounts.

On August 24, 2009, appellant filed a "Notice of Appeal and Alternatively, Application for Leave to Appeal," challenging the order of restitution. On May 27, 2010, we issued an order granting appellant's application for leave to appeal and transferring this case to the direct appeal docket.[5]

## DISCUSSION

Appellant contends that "the circuit court erred in ordering [him] to pay restitution to Williams Sonoma, Inc. and to Next Day Blinds where the property had been restored to the owner." He argues that, pursuant to C.L. § 7–104(g)(1)(ii), "the court could not order restitution for the items of property that have been restored to the owner." [6]

---

**5.** Pursuant to Md.Code (2006 Repl. Vol.), § 12–302(e) of the Courts and Judicial Proceedings Article, "an appeal from a final judgment entered following a plea of guilty in a circuit court .... shall be sought by application for leave to appeal."

**6.** Appellant acknowledges that, with respect to items stolen from Williams–Sonoma, the company determined "that only a small portion of the items could be resold," and the other items were donated to charity or "trashed." Appellant further acknowledges that the blinds were not returned to Next Day Blinds. He suggests, without specifically arguing, that because Next Day Blinds released the blinds to the

The State contends that appellant's "express agreement to pay restitution as determined by the circuit court as part of the binding plea agreement waives his appellate challenge to the restitution order." It further argues that the restitution awards were appropriate, supported by competent evidence, and fair, asserting that the "property had little to no value to Williams Sonoma and Next Day Blinds." The State rejects appellant's argument "that the hearing judge's order, requiring him to pay restitution, was barred under § 7–104(g) because the stolen goods had been returned to Williams Sonoma and offered to Next Day Blinds," stating that the general restitution statute, Md.Code (2008 Repl. Vol.), § 11–603(a)(1) of the Criminal Procedure Article ("C.P."), "makes clear that the General Assembly intended that courts would order restitution even after stolen goods were returned to their owner." It argues that the purpose of the restitution statute would not be satisfied if stolen goods merely were returned to a retailer.

As a preliminary matter, we must address whether the appeal was timely filed. The Maryland Rules provide that both a notice of appeal and an application for leave to appeal "shall be filed within 30 days after entry of the judgment or order from which the appeal is taken." Md. Rule 8–202(a) (notice of appeal); Md. Rule 8–204(b)(2)(A) (application for leave to appeal). With respect to a notice of appeal, the requirement that it "be filed within thirty days of a final judgment is jurisdictional; if the requirement is not met, the appellate court acquires no jurisdiction and the appeal must be dismissed." *Houghton v. County Comm'rs of Kent County,* 305 Md. 407, 413, 504 A.2d 1145 (1986). When an application for leave to appeal is granted, and it is determined that the application was not filed timely, this same principle applies, and the appeal must be dismissed. *See Michael v. State,* 85 Md.App. 735, 738, 584 A.2d 1317 (1991) ("the rationale for requiring strict adherence to the time requirements in the

---

Police Department, that was the equivalent of having the blinds restored.

case of appeals of right is no less persuasive where application for leave to appeal is sought"). *See also* Rule 1–204(a) (the "court may not shorten or extend the time for filing . . . a notice of appeal [or] an application for leave to appeal").

■ Here, the court's order of restitution was issued on July 17, 2009. A stamp on the order indicates that it was filed on July 20, 2009, and the docket entries reflect that the order was entered on July 20, 2009. Appellant's application for leave to appeal was not filed, however, until August 24, 2009, which was more than 30 days after entry of the order of restitution.

The record contains other documents, however, which are titled "NOTICE OF RECORDED JUDGMENT." These documents indicate that judgment was recorded in favor of Williams–Sonoma, Inc. and Next Day Blinds, and that the judgment entry date was July 24, 2009. If July 24, 2009, is the relevant date for purposes of appeal, the appellant's application for leave to appeal, filed on August 24, 2009, was timely.[7]

After the question of the timeliness of the appeal was raised at oral argument, counsel for both parties submitted supplemental memoranda addressing the issue. Appellant argues:

> [T]he record in this case indicates in one place an entry of judgment of restitution on July 24, 2009 and in another place an entry of restitution on July 20, 2009. In making a final determination of this conflict the court should accept the July 24, 2009 judgment entry date as specified on the Notice of Recorded Judgment since Judge Hughes' July 17, 2009 Order was mailed out at the same time and in the same envelope as the Notices of Recorded Judgment.

---

7. Thirty days after July 24, 2009, was August 23, 2009. Because that day was a Sunday, however, the 30–day time for noting an appeal would be extended to Monday, August 24, 2009. *See* Rule 1–203 (in computing a period of time prescribed by the Maryland Rules, if the last day of the period "is a Saturday, Sunday, or holiday . . . the period runs until the end of the next day that is not a Saturday, Sunday, or holiday. . . .")

Appellant further recounts a conversation with a clerk, who, although having no personal knowledge of this case, surmised as to the events that occurred and suggested that the July 20, 2009, entry date on the docket entries should have been changed to July 24, 2009.

The State contends that the "entry of the judgment or order from which the appeal was sought" occurred on July 20, 2009, when the order of restitution in the criminal case was entered. Because the application for leave to appeal was filed more than 30 days after that date, the State argues that the appeal should be dismissed. With respect to the reference to entry of judgment on July 24, 2009, the State asserts that this was when a civil judgment was indexed and recorded. It argues that this was "unrelated to the final judgment of the trial court in the underlying criminal sentence that is the subject of [the] application for leave to appeal challenging the restitution in a criminal case." We agree.

Maryland Code (2006 Repl. Vol.), § 12–301 of the Courts and Judicial Proceedings Article ("C.J.P."), authorizes a party to appeal from " 'a final judgment entered in a civil or criminal case by a circuit court.' " *Schuele v. Case Handyman & Remodeling Servs., LLC,* 412 Md. 555, 565, 989 A.2d 210 (2010) (quoting *Addison v. Lochearn Nursing Home, LLC,* 411 Md. 251, 261, 983 A.2d 138 (2009)). C.J.P. § 12–101(f) defines "final judgment" as "a judgment, decree, sentence, order, determination, decision, or other action by a court, including an orphans' court, from which an appeal, application for leave to appeal, or petition for certiorari may be taken." In a criminal case, a final judgment is rendered when " 'the court has entered a verdict and a sentence.' " *Johnson v. State,* 142 Md.App. 172, 201, 788 A.2d 678 (quoting *Christian v. State,* 309 Md. 114, 119, 522 A.2d 945 (1987)), *cert. denied,* 369 Md. 180, 798 A.2d 552 (2002). *Accord State v. Lee,* 178 Md.App. 478, 484, 943 A.2d 14 (2008) (final judgment occurred when the trial court sentenced appellee for his convictions).

Here, the final judgment that is the subject of appeal is the court's order of restitution in the criminal case.[8] That order was issued on July 17, 2009. As indicated, however, the relevant date in determining the timeliness of appeal is not the date the order was issued. Rather, pursuant to Md. Rule 8–204(b)(2)(A), an application for leave to appeal "shall be filed within 30 days after **entry of the judgment or order from which the appeal is sought.**" (Emphasis added). *Accord Sapero & Sapero v. Bel Air Plumbing,* 41 Md.App. 251, 258, 396 A.2d 317 (1979) (right to appeal from "a 'final judgment entered,' not a final judgment rendered."). *See also Coles v. State,* 290 Md. 296, 302, 429 A.2d 1029 (1981) (in appeal challenging validity of probation condition, the Court noted that appeal must be taken within 30 days following *entry* of final judgment).

In determining when "entry" of the judgment occurs, Rule 8–202(f) explains that it "occurs on the day when the clerk of the lower court first makes a record in writing of the judgment, notice, or order on the file jacket, on a docket within the file, or in a docket book, according to the practice of that court, and records the actual date of the entry." As the State notes, the docket entries show that the "Order of Court Granting Restitution as outlined in State's Petition both as a condition of probation and a term of his sentence," was entered on July 20, 2009.

Appellant acknowledges this docket entry, but he contends that there is a "direct conflict" in the record regarding when the restitution order was entered, stating that "the notices of recorded judgment clearly indicate that the judgment was entered by the Clerk on July 24, 2009." He contends that this Court "should accept the July 24, 2009 judgment entry date" because the trial court's restitution order "was mailed . . . in

---

8. The Notice of Appeal and Alternatively, Application for Leave to Appeal stated that appellant was challenging the order of restitution and the civil judgments. Appellant's brief, however, addressed only the order of restitution, and counsel for appellant stated in oral argument that his challenge was to the order of restitution.

the same envelope with the Notices of Recorded Judgment on July 24, 2009."

We do not agree that there is a conflict in the record regarding the date the order of restitution was entered. The docket entries clearly show that the order was entered on July 20, 2009. The July 24, 2009, date on the notices of recorded judgment reflect the entry of a separate civil judgment.

C.P. § 11–609(a) provides that a judgment of restitution ordered by a circuit court "shall be recorded and indexed in the civil judgment index by the clerk of the circuit court as a money judgment as the Maryland Rules provide." [9] The statutory scheme reflects that the civil judgment is separate from the criminal judgment of restitution. *See* C.P. § 11–612(b) ("Subject to the Maryland Rules, unless a restitution obligor pays complete restitution, termination of probation by a court does not affect a money judgment that has been recorded and indexed under Part I of this subtitle.").

The July 24, 2009, entry date listed in the notice of recorded judgment refers to the indexing and recording of the order of restitution as a civil judgment. Although the civil judgment could be entered on the same day as the order of restitution in the criminal case, here it was not. The final judgment in the criminal case, the order of restitution which is the subject of this appeal, was entered on July 20, 2009. Accordingly, appellant's application for leave to appeal, which was filed on August 24, 2009, was not timely filed.

**APPEAL DISMISSED. COSTS TO BE PAID BY APPELLANT.**

---

**9.** Maryland Rule 4–354(b) provides:

> b) **Judgment of restitution.** A judgment of restitution may be enforced in the same manner as a money judgment entered in a civil action.